## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| CLARISSA HAGGARD, for herself and others similarly situated, | CASE NO. 4:17-cv-1199 |
| v. | |
| CAREGIVERS HOME HEALTH TEXAS, INC. | |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Caregivers Home Health Texas, Inc. d/b/a Touch of Class Homecare (Touch of Class) failed to pay Clarissa Haggard (Haggard), and other workers like her, overtime as required by federal law.

2.      Instead, Touch of Class paid Haggard, and other workers like her, the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

3.      Haggard brings this collective action to recover unpaid overtime and other damages.

### JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 a significant portion of the facts giving rise to this lawsuit occurred in this District and Division.

6.      Touch of Class maintains several offices in this District.

7.      Touch of Class has its Corporate address in this District and Division.

**PARTIES**

8.      Haggard was an hourly employee of Touch of Class. Her written consent is attached.

9.      Caregivers Home Health Texas, Inc. d/b/a Touch of Class Homecare is a Texas company.

10.     Touch of Class may be served with process by serving its registered agent.

**FACTS**

11.     Touch of Class provides community living assistance and support services, as well as primary home care, and other similar services, to its clients. *See* http://touchofclass.net/Services.

12.     It operates multiple locations across Texas (including Houston, Amarillo, Austin, Corpus Christi, Dallas, Fort Worth, and San Antonio). *See* http://touchofclass.net/Locations

13.     Touch of Class's gross revenues have exceeded $2,000,000 in each of the past 3 years.

14.     Touch of Class's employees routinely use, handle, sell, or work on vehicles, cleaning supplies, telephones, and medical equipment that were produced for interstate commerce or actually traveled in interstate commerce.

15.     Touch of Class is a "covered enterprise" subject to the requirements of the FLSA.

16.     Haggard was an hourly employee of Touch of Class.

17.     Haggard was hired around October 2014.

18.     Haggard was hired as a home health nurse to provide assistant to invalid patients.

19.     Haggard is still employed by Touch of Class as a home health nurse.

20.     Since her employment began, Touch of Class has paid Haggard by the hour.

21.     Touch of Class originally paid Haggard $11.75 per hour for hours worked Monday through Friday.

22.     For work on the weekends, Haggard received $8 an hour "In Home Respite" pay instead of her normal hourly rate of $11.75.

23.     Touch of Class paid Haggard this way until approximately December 2015, when it lowered her normal weekday rate to $10.69 because it was going to begin paying overtime.

24.     Prior to her pay being reduced, Haggard normally worked more than 40 hours in a week.

25.     For example, in the two-week ending September 4, 2015, Haggard worked 127 hours (an average of more than 63 hours a week).

26.     Touch of Class paid Haggard for 100 hours at her hourly rate of $11.75 an hour and 27 hours at $8 per hour.

27.     In the two-week ending September 18, 2015, Haggard worked 122 hours (an average of more than 60 hours a week).

28.     Touch of Class paid Haggard for 100 hours at her hourly rate of $11.75 an hour and 22 hours at $8 per hour.

29.     In the two-week ending October 2, 2015, Haggard worked 132 hours (an average of more than 65 hours a week).

30.     Touch of Class paid Haggard for 100 hours at her hourly rate of $11.75 an hour and 32 hours at $8 per hour.

31.     Despite knowing Haggard was regularly working overtime, Touch of Class never paid her overtime.

32.     Instead, Touch of Class simply paid the applicable straight time rate (either $11.75 or $8) without any overtime premium whatsoever.

33.     Thus, rather than receiving time and half as required by the FLSA, Haggard only received "straight time" pay for the overtime hours she worked.

3

34.     This "straight time for overtime" payment scheme violates the FLSA.

35.     Even after Touch of Class lowered Haggard's rate of pay to $10.69 an hour, it continued to pay overtime based on an incorrect rate and excluded certain hours from its overtime calculation.

36.     For example, in the two-week ending September 2, 2016, Haggard worked 106 hours.

37.     Of this 106 hours, Touch of Class paid 80 hours at $10.69 an hour, 20 hours at $17.63 (1.5 * $10.69) an hour, and 6 hours at $8 an hour.

38.     In the two-week ending October 29, 2016, Haggard worked 129.5 hours.

39.     Of this 106 hours, Touch of Class paid 80 hours at $10.69 an hour, 20 hours at $17.63 ($10.69 * 1.5) an hour, and 29.5 hours at $8 an hour.

40.     In other words, continued to pay the weekend hours at straight time.

41.     This "straight time for overtime" payment scheme also violates the FLSA.

42.     Despite knowing she was working more than 40 hours a week, Touch of Class paid Haggard at the same hourly rate for certain hours worked in excess of 40 in a workweek.

43.     Thus, rather than receiving time and half as required by the FLSA, Haggard only received "straight time" pay for certain overtime hours worked.

44.     Throughout her employment, Touch of Class maintained records of the hours Haggard, and the other employees like her, worked.

45.     Touch of Class knew the FLSA required it to pay overtime to workers like Haggard.

46.     As a member of the home health care industry, Touch of Class knew the extension of overtime rights to workers like Haggard was coming long before it took effect.

47.     Touch of Class nonetheless failed to pay certain hourly employees, such as Haggard, overtime.

48.    Touch of Class's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

49.    Touch of Class's illegal "straight time for overtime" policies extends beyond Haggard.

50.    It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

51.    Touch of Class paid numerous hourly workers according to the same unlawful scheme.

52.    Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

53.    The workers impacted by Touch of Class's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b). Therefore, the class is properly defined as:

**All hourly employees of Touch of Class who were, at any point in the past 3 years, paid "straight time" for any overtime hours worked.**

### CAUSE OF ACTION

54.    By failing to pay Haggard and those similarly situated to her overtime at one-and-one-half times their regular rates, Touch of Class violated the FLSA's overtime provisions.

55.    Touch of Class owes Haggard and those similarly situated to her the difference between the rate actually paid and the proper overtime rate.

56.     Because Touch of Class knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Touch of Class owes these wages for at least the past three years.

57.     Touch of Class is liable to Haggard and those similarly situated to her for an amount equal to all unpaid overtime wages as liquidated damages.

58.     Haggard and those similarly situated to her are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**PRAYER**

45.     Haggard prays for relief as follows:

a.      An order allowing this action to proceed as a collective action under the FLSA and directing notice to all hourly employees who received straight time for overtime;

b.      Judgment awarding Haggard and those similarly situated to her all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

c.      An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

d.      All such other and further relief to which Haggard and those similarly situated to her may show themselves to be justly entitled.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

**/s/ Rex Burch**

By: _____
        Richard J. (Rex) Burch
        Texas Bar No. 24001807
        S.D. Tex. No. 21615
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile
rburch@brucknerburch.com

JOSEPHSON DUNLAP
Michael A. Josephson
State Bar No. 24014780
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-351-1100 – Telephone
mjosephson@fibichlaw.com

DocuSign Envelope ID: 0CF379D5-F7C9-46DE-B20D-32BA9508CA41

## CONSENT TO JOIN WAGE CLAIM

Print Name: _Clarrisa haggard_

1. I hereby consent to participate in a collective action lawsuit against **Caregivers Home Health Texas, Inc. / Touch of Class** (and its related entities) to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at BRUCKNER BURCH PLLC as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: _DocuSigned by: [signature] 683553D1D49649A_          Date Signed: _4/12/2017_